T.C. Summary Opinion 2012-32

UNITED STATES TAX COURT

SCOTT M. IOVINE AND SHARLYNE P. OLIVA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24585-09S.                                Filed April 10, 2012.

Scott M. Iovine and Sharlyne P. Oliva, pro sese.

<u>Karen J. Lapekas</u>, for respondent.

SUMMARY OPINION

GOEKE, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463[1] of the Internal Revenue Code.  Pursuant to section 7463(b), the decision to be

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue
Code in effect for the years in issue, and all Rule references are to the Tax Court

(continued...)

entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies in petitioners' 2005 and 2006 joint Federal income taxes of $11,265 and $17,396, respectively. After settlement of certain issues, the sole issue remaining for decision is whether petitioners are entitled to deduct losses resulting from rental real estate activities or whether such losses are passive activity losses under section 469. We hold that the losses are passive activity losses.

## Background

At the time the petition was filed, petitioners resided in Florida.

## I. Petitioners' Properties

During 2005 and 2006 Scott Iovine worked as a pilot for American Airlines and Sharlyne Oliva worked for the same company as a flight attendant. At the end of 2005 Mr. Iovine moved from Chicago, Illinois, to Miami, Florida, as a result of his marriage to Ms. Oliva, who had family ties in Florida.

Mr. Iovine began investing in real estate in 1986. In 1997 he owned three properties, and in 2003 he earned an Illinois real estate broker's license. Ms. Oliva

---

[1](...continued)
Rules of Practice and Procedure.

also owned at least two properties before 2005. At the beginning of 2005 petitioners collectively owned four properties in Illinois and three properties in Florida.[2] During 2005 they sold one of the properties in Illinois and bought three more properties in Florida. Petitioners bought and sold no properties in 2006. The properties petitioners owned in 2006 are discussed further infra.

Although petitioners rented the properties they owned, property expenses and depreciation were greater than the rents received. As a result, petitioners claimed rental real estate losses of $101,814 and $154,945 on their 2005 and 2006 tax returns, respectively. Petitioners used these losses to offset other income and thus reported taxable income of $88,719 for 2005 and negative $16,171 for 2006. Respondent allowed the rental losses to offset certain gains (such as a gain on the property sold in 2005 and gains on property rentals) but still determined increases in petitioners' incomes of $39,725 and $149,465 for 2005 and 2006, respectively.

II. Petitioners' Records

Petitioners introduced logs which state the amount of time Mr. Iovine purportedly spent on rental real estate activities in 2005 and 2006. Petitioners

---

[2]These properties included both houses and condos. One commercial property was owned at the beginning of 2005 but was sold during that year.

stipulated that they created each of the logs after September 1, 2007, in response to an IRS audit.

The 2005 log contains dates and descriptions of activities which purportedly took place on those dates. Petitioners did not create the 2005 log using records in Chicago; rather, they prepared the log in Florida on the basis of their recollection. Mr. Iovine also recognized that the 2005 log is "a sloppy thing" and "not pleasing in its accuracy".[3] The 2005 log does not list the number of hours spent on real estate activities. Using the 2005 log, petitioners estimate that Mr. Iovine spent between 928 and 1,123 hours participating in real estate activities during 2005.

Like the 2005 log, the 2006 log contains dates and descriptions of activities which purportedly took place on those dates. Although the 2006 log does not state the total number of hours spent on real estate activities, petitioners created an accompanying table entitled "Schedule of Hours, Days, Properties" (2006 schedule of hours) which lists the number of hours Mr. Iovine spent working on properties each day. The 2006 schedule of hours lists dates on which real estate activities were done, the property/properties at which the activities were done, a condensed description of the activities, and the hours spent on the activities. The schedule lists

---

[3]The 2005 log contains a multitude of inaccuracies, such as listing work done on September 31, a nonexistent date.

a total of 898.5 hours spent by Mr. Iovine on real estate activities in 2006. Petitioners stipulated that they also created the 2006 schedule of hours after September 1, 2007, and admit that the hours listed are estimates.

Petitioners believe that unlike the 2005 log, the 2006 log and schedule of hours are largely accurate representations of Mr. Iovine's rental real estate activities.[4] Petitioners created the 2006 log and schedule of hours by supplementing Mr. Iovine's memory with emails from tenants to petitioners, rental documents, several dozen photographs of damage to property and repairs done, and over 50 copies of receipts/invoices from home supply stores, utilities, and contractors.

The 2005 log, the 2006 log, and the 2006 schedule of hours reflect that a multitude of contractors were hired to do work on petitioners' properties in 2005 and 2006. Properties for which petitioners hired contractors in 2006 include 1611 Michigan, unit # 18; 601 N. Michigan, unit # 4; and 601 N. Michigan, unit # 5 (these properties are discussed further infra). Petitioners did not account for the time contractors spent working on their properties.

---

[4]Petitioners admit that there were three mistakes made on the 2006 log, such as listing some work done by Ms. Oliva in Florida while petitioner was in Illinois and two errors relating to the dates on which two activities were performed. These errors were minor and did not result in an improper counting of hours.

III.  Petitioners' Properties and Mr. Iovine's Real Estate Work in 2006

In 2006 petitioners owned the following nine properties:  (1) 75 S. Burr Oak; (2) 5460 W. Higgins Rd., unit # 302; (3) 4503 McCauley Rd.; (4) 1611 Euclid, unit # 15; (5) 1611 Michigan, unit # 18; (6) 1611 Michigan, unit # 20; (7) 3550 Pomona; (8) 601 N. Michigan, unit # 4; and (9) 601 N. Michigan, unit # 5.

In assigning hours to properties on the 2006 schedule of hours, petitioners often grouped two or more properties into the same day.  When such groupings occurred, hours worked for each of the individual properties were not listed.[5] According to the information provided, we have no reliable means to prorate hours among properties when hours were listed in this manner.

Considering only those days in which hours were assigned to a single property, the hours Mr. Iovine worked at each property were listed on the 2006 schedule of hours as follows--

---

[5]For example, the 2006 schedule of hours for April 2 shows that Mr. Iovine did work at both 3550 Pomona and 1611 Michigan, unit # 20.  The total hours for the day is listed as 4.5 but the hours are not divided between the two properties.

| Property | Hours[1] |
|---|---|
| 75 S. Burr Oak | --- |
| 5460 W. Higgins Rd., unit # 302 | --- |
| 4503 McCauley Rd. | --- |
| 1611 Euclid, unit # 15 | --- |
| 1611 Michigan, unit # 18 | 96.5 |
| 1611 Michigan, unit # 20 | 123 |
| 3550 Pomona | 114 |
| 601 N. Michigan, unit # 4 | 32 |
| 601 N. Michigan, unit # 5 | 46 |

[1]All numbers are rounded to the nearest half hour.

When hours are prorated evenly for days which list more than one property,[6][7] the hours worked by Mr. Iovine increase to--

| Property | Hours |
|---|---|
| 75 S. Burr Oak | 144 |
| 5460 W. Higgins Rd., unit # 302 | 3 |
| 4503 McCauley Rd. | 154 |
| 1611 Euclid, unit # 15 | 6 |
| 1611 Michigan, unit # 18 | 139 |
| 1611 Michigan, unit # 20 | 182 |
| 3550 Pomona | 149.5 |
| 601 N. Michigan, unit # 4 | 48.5 |
| 601 N. Michigan, unit # 5 | 72 |

[6]For example, if a day listed nine hours worked at three different properties, three hours would be assigned to each of those properties.

[7]Some days list "ALL" as well as another property. For such days we assigned half the hours to the "ALL" category (which was then evenly divided among all nine properties owned in 2006) and assigned half the hours solely to the separately listed property.

IV. <u>American Airlines Timesheets and Other Information</u>

Petitioners produced extensive timesheets for work Mr. Iovine completed as a pilot for American Airlines. The timesheets reflect that Mr. Iovine worked at least 812 hours for American Airlines in 2006.

Petitioners did not elect on their 2005 or 2006 income tax return to treat all of Mr. Iovine's real estate activities as a single activity. Mr. Iovine testified that an amended 2006 return was filed which did include such an election for 2006, but no evidence of such a return was produced.

On August 6, 2009, respondent issued a notice of deficiency to petitioners for 2005 and 2006. Petitioners timely filed a petition contesting the deficiencies. A trial was held in Miami, Florida, on November 1, 2010.

Discussion

I. <u>Burden of Proof</u>

The Commissioner's determinations in a notice of deficiency are presumed correct, and taxpayers bear the burden of proving that the Commissioner's determinations are incorrect. Rule 142(a)(1); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and taxpayers bear the burden of proving that they have met all requirements necessary to be entitled to the claimed deductions. Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79,

84 (1992). Petitioners have not argued that section 7491(a) applies in this case and therefore bear the burden of proof.

## II. Whether Mr. Iovine Was a Real Estate Professional

Section 469(a)(1)(A) operates to generally disallow passive activity losses. A passive activity loss is defined as the excess of the aggregate losses from all passive activities for a year over the aggregate income from all passive activities for the year. Sec. 469(d)(1). Passive activities include any trade or business in which the taxpayer does not "materially participate". Sec. 469(c)(1). Section 469(c)(2) provides that except as provided in section 469(c)(7), the term "passive activity" includes any rental real estate activity. However, under section 469(c)(7)(B), a taxpayer qualifies as a real estate professional and is not engaged in a passive activity if--

> (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

> (ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

For taxpayers filing a joint return, the real estate professional requirements are satisfied only if either spouse separately satisfies such requirements. Sec. 469(c)(7)(B).

Petitioners maintain Mr. Iovine is a real estate professional under section 469(c)(7)(B).[8] We disagree with petitioners, finding that Mr. Iovine did not meet the 750-hour requirement of section 469(c)(7)(B)(ii) for 2005 and did not satisfy section 469(c)(7)(B)(i) for 2006 because he spent more hours working as a pilot than he did participating in real estate activities.

A. <u>2005</u>

Section 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988), sets forth the requirements necessary to establish the taxpayer's hours of participation as follows:

> The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means. Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries.

---

[8]Petitioners acknowledge that Ms. Oliva is not a real estate professional.

We have held that "while the regulations are somewhat * * * [ambiguous] concerning the records to be maintained by taxpayers, they by no means allow a postevent 'ballpark guesstimate'." Carlstedt v. Commissioner, T.C. Memo. 1997-331 (citing Speer v. Commissioner, T.C. Memo. 1996-323).

Petitioners have essentially conceded that the 2005 log is not sufficient to establish that Mr. Iovine spent more than 750 hours participating in real estate activities in 2005.[9] We will not dwell on the 2005 log other than to note its admitted extensive errors, lack of hours worked per day or per property, and lack of contemporaneous verification. Using the 2005 log, petitioners were able to make no more than a "ballpark guesstimate" of the number of hours Mr. Iovine spent participating in real estate activities in 2005.

We find the 2005 log is an insufficient means of establishing whether Mr. Iovine spent more than 750 hours participating in real estate activities in 2005. Mr. Iovine thus failed to satisfy section 469(c)(7)(B)(ii) and so cannot be considered a real estate professional for 2005, and petitioners' real estate activity losses for that year are therefore passive losses under section 469(c).

---

[9]In the "Final Argument" section of their brief, petitioners claim that sufficient documentation was provided for 2006 and "given adequate time and resources, * * * [petitioners are] convinced enough evidence exists to provide witnesses and other documents to prove participation in 2005 as well."

B. <u>2006</u>

For purposes of determining whether a taxpayer is a real estate professional, a taxpayer's material participation is determined separately with respect to each rental property, unless the taxpayer makes an explicit election to treat all interests in rental real estate as a single rental real estate activity. Sec. 469(c)(7)(A); <u>Bailey v. Commissioner</u>, T.C. Memo. 2001-296; sec. 1.469-9(c)(3), (e)(1), Income Tax Regs. Petitioners did not make such an election on their 2005 or 2006 tax return. Although petitioners claim they made such an election on an amended 2006 return, no evidence of such a return was provided. Even if they had made an election on an amended return, such an election would not be effective for 2006 because "a taxpayer must make an explicit election with his or her <u>original</u> return." <u>Trask v. Commissioner</u>, T.C. Memo. 2010-78 (emphasis supplied); <u>see also</u> sec. 1.469-9(g)(3), Income Tax Regs.

Because petitioners failed to make an election under section 1.469-9(e)(1), Income Tax Regs., we evaluate each of their properties separately in order to determine whether Mr. Iovine materially participated in real estate activity for each property. Material participation is defined as involvement in the operations of the activity that is regular, continuous, and substantial. Sec. 469(h)(1). An individual taxpayer materially participates in an activity if he or she meets any one of the

following tests:[10]  (1) he or she participates more than 500 hours during the year; (2) his or her participation is substantially all of the participation of individuals in that activity for the year (including individuals who are not owners of interests in the activity); (3) he or she participates more than 100 hours and no other individual participated more; (4) the activity is a significant participation activity and his or her aggregate participation in all significant participation activities exceeds 500 hours; (5) he or she materially participates for 5 out of 10 years immediately preceding the year in issue; (6) the activity is a personal service activity and he or she materially participated for any 3 years preceding the year in issue; or (7) on all the facts and circumstances, he or she participated on a regular, continuous, and substantial basis during the year.  Bailey v. Commissioner, T.C. Memo. 2001-296; Kosonen v. Commissioner, T.C. Memo. 2000-107; sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988).

---

[10]In determining whether a taxpayer materially participates, the participation of the spouse of the taxpayer shall be taken into account.  Sec. 469(h)(5).  However, petitioners did not introduce logs, testimony, or other evidence which would help us determine the number of hours Ms. Oliva spent participating in real estate activities, and we are thus unable to take any of her possible participation into account.  See Bailey v. Commissioner T.C. Memo. 2001-296 (taxpayers' "assertion that * * * [husband] spent time in the activity appears to be an afterthought; such participation is not mentioned in the testimony of * * * [wife], who described only her own actions.  Thus, we are unable to take into account the hours, if any, spent by * * * [husband] in the operation of the * * * property.").

For brevity, we will examine the seven tests of section 1.469-5T(a), Temporary Income Tax Regs., supra, only with respect to the 1611 Michigan, unit # 18, 601 N. Michigan, unit # 4, and 601 N. Michigan, unit # 5 properties.

Mr. Iovine fails the fifth and sixth tests for each of the three properties because petitioners introduced evidence only from 2005 and 2006 and tests 5 and 6 each require records for at least three years. See sec. 1.469-5T(a)(5) and (6), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988).

The first, third, fourth, and seventh tests each require a taxpayer to spend over 100 hours at a property. See id. paras. (a)(1), (3), (b)(2)(iii), (c)(2) (first, third, fourth, and seventh tests each require more than 100 hours' participation at a property). Mr. Iovine fails each of these tests for 601 N. Michigan, unit # 4 and 601 N. Michigan, unit # 5 because he spent only 32 and 46 nonprorated hours performing real estate activities at these properties, respectively, in 2006. Mr. Iovine also fails the first, third, fourth, and seventh tests for 1611 Michigan, unit # 18, because he spent only 96.5 nonprorated hours performing real estate activities at this property in 2006.

Although Mr. Iovine would have spent more than 100 hours at 1611 Michigan, unit # 18, if hours were prorated evenly for days for which the 2006 schedule of hours failed to assign hours to individual properties, we have previously

refused to evenly prorate hours to aid taxpayers in this test. See Kosonen v. Commissioner, T.C. Memo. 2000-107 (a taxpayer who spent a total of 877 hours on seven rental real estate properties but failed to provide evidence of the number of hours he spent on any one of the rental properties did not establish material participation in any one of his rental real estate activities). However, even if we did evenly prorate the hours listed for days on which Mr. Iovine worked at more than one property among each of the properties listed for that day, Mr. Iovine would still not satisfy the requirements of section 469(c)(7)(B)(i).[11]

Finally, Mr. Iovine fails the second test because contractors performed work on each of 1611 Michigan, unit # 18, 601 N. Michigan, unit # 4, and 601 N.

---

[11]Had we evenly prorated Mr. Iovine's hours for days when he worked at more than one property in 2006, the number of hours worked at 1611 Michigan, unit # 18 would have increased to 139. For sake of argument, we will assume this would result in Mr. Iovine's participation in activities at this property becoming material under one of the 100 hour tests of sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988).

However, evenly prorating hours would also increase the number of hours assigned to 601 N. Michigan, unit # 4 and 601 N. Michigan, unit # 5 to 48.5 and 72 hours, respectively. As the number of hours assigned to these properties would remain under 100, Mr. Iovine would still not have materially participated in those properties. Subtracting 48.5 and 72 from the 898.5 hours listed on the 2006 schedule of hours yields only 778 hours of material participation in real estate in 2006. This number is still smaller than the 812 hours Mr. Iovine worked at American Airlines during 2006, and the real estate losses for that year would thus still be passive losses under sec. 469(c).

Michigan, unit # 5 in 2006, but petitioners did not indicate the amount of time the contractors worked on these properties. See Pohoski v. Commissioner, T.C. Memo. 1998-17 (second test not satisfied when taxpayers failed "to put forth some indication of the actual time spent by" third-party nonowners in activities on the property).

Mr. Iovine acknowledged that he spent at least 812 hours working for American Airlines in 2006. Thus, in order to satisfy section 469(c)(7)(B)(i), petitioners must show that Mr. Iovine spent over 812 hours in real property trades or businesses in which he materially participated.

Petitioners' 2006 schedule of hours reflects 898.5 hours spent by Mr. Iovine on real estate activities in total in 2006. However, petitioners did not materially participate in the 1611 Michigan, unit # 18, 601 N. Michigan, unit # 4, and 601 N. Michigan, unit # 5 properties. See supra pp. 12-14. Therefore, the number of hours listed on the 2006 schedule of hours for these three properties does not count toward satisfying the section 469(c)(7)(B)(i) requirement, and Mr. Iovine fails the requirement. See sec. 469(c)(7)(B)(i) (a taxpayer qualifies as a real estate

professional if "more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates" (emphasis supplied)).

Mr. Iovine spent 174.5 hours[12] at 1611 Michigan, unit # 18, 601 N. Michigan, unit # 4, and 601 N. Michigan, unit # 5, collectively. Subtracting these 174.5 hours from the 898.5 hours listed on the 2006 schedule of hours yields only 724 hours, less than the 812 hours petitioners acknowledge Mr. Iovine worked for American Airlines during 2006. As a result, Mr. Iovine was not a real estate professional under section 469(c) in 2006 and the real estate related losses are passive activity losses in that year.

---

[12]This number does not include prorated hours.

C.  Conclusion

We hold that petitioners' real estate related losses are passive activity losses for both 2005 and 2006.  In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.